UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:21-CV-00151-GNS-HBB

JASON JONES                                                              PLAINTIFF

v.

FLUOR FACILITY & PLANT SERVICES, INC. et al.               DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion for Reimbursement of Costs (DN 63),

Defendants' Motion to Seal (*Jones II*, DN 71), Defendants' Motion for Summary Judgment

Following Remand (DN 68), and Defendants' Motion for Summary Judgment (*Jones II*, DN 68).

The motions are ripe for adjudication.

## I.       STATEMENT OF FACTS AND CLAIMS

Plaintiff Jason Jones ("Jones") was hired by Defendant Fluor Facility and Plant Services,

Inc. ("Fluor") in May 2020 to work on the maintenance team at Logan Aluminum.  (Jones Dep.

21:23-25, 23:10-13, Nov. 21, 2022, DN 38-2 [hereinafter Jones Dep. I]).  He was the only black

employee on the night shift.  (*See* Thornberry Dep. 57:7-15, Feb. 15, 2023, DN 40-1 [hereinafter

Thornberry Dep. I]).

Jones testified that his coworkers used racist language and retaliated against him after they

were told to stop.  One coworker called Jones the N-word, but was then moved to another location.

(Jones Dep. I 59:6-9; 61:17-24).  Another coworker, Defendant Tim Bowersock ("Bowersock"),

allegedly told racist jokes and asked Jones to tell racist jokes about white people.  (Jones Dep. I

62:10-63:6).  On November 9, 2020, the night shift supervisor, Mark Thornberry ("Thornberry"),

held a meeting to address racist jokes and language in the workplace.  (Thornberry Dep. I 79:18-

81:5).  The next day, Bowersock threw some substance, allegedly grease, on Jones' windshield while Jones was in his car.  (Jones Dep. I 68:18-69:11; Thornberry Dep. I 103:12-104:22).  Thornberry reported this to Casey Craig ("Craig"), his supervisor, who told Bowersock to "stop it."  (Thornberry Dep. I 105:21-106:11).  Later, Bowersock saw another employee get oil on his arm and then ask Jones if that employee was "[his] boy" which Jones understood to be a racially motivated question.  (Jones Dep. I Ex. 1, at 2).  Jones alleges that his coworkers frequently used the word "boy" and made references to racial stereotypes—that Jones was a rapper or played basketball because he was black.  (Jones Dep. I 266:18-21).

Jones also testified that he was ostracized by his coworkers.  He reported that he was excluded from buggy rides to work sites, forcing him to walk.  (Jones Dep. I Ex. 1, at 4).  Jones explained that his coworkers never directly refused to give him a ride, but would simply leave him behind, despite the buggy not being full.  (Jones Dep. I 71:11-73:3).  Jones did not say who excluded him or how often he was excluded.  (Jones Dep. I 72:15-73:5).  Jones also testified that his coworkers seemed to not want to be around him and would leave or turn their back to him in the break room.  (Jones Dep. I 73:15-23).  Jones testified that while he was never told directly not to come into the break room, his coworkers' behavior implied that they did not want to sit with him.  (Jones Dep. I 73:15-23).

In March 2021, Jones filed a written statement with Fluor describing his coworkers' conduct.  (*See* Jones Dep. I Ex. 1).  Fluor investigated and concluded that there was no evidence of any jokes of a racial nature after the November meeting.  (Jones Dep. I Ex. 11, at 1).  Jones also filed a charge with the Equal Employment Opportunity Commission ("EEOC") and spoke with an EEOC investigator.  (Jones Dep. I 172:8-173:1, 245:5-7).  The EEOC investigator told Jones that

"the information provided did not support a potential violation of the law . . . ."  (Jones Dep. I 175:12-23; Jones Dep. I Ex. 18).

Jones then filed suit against Fluor in this Court.  (Compl., DN 1).  This Court entered summary judgment against Jones, and Jones appealed.  (Mem. Op. & Order, DN 42; Notice Appeal, DN 47).  The Sixth Circuit reversed and remanded, upholding Jones' retaliation claim and instructing this Court to analyze the last element of Jones' harassment claim.  *Jones v. Fluor Facility & Plant Servs.*, No. 24-5249, 2025 WL 707869, at *23-24, *29 (6th Cir. Mar. 5, 2025) [hereinafter *Jones I Appeal*].

After taking legal action, Jones alleged that his coworkers continued to ostracize him.  Jones testified that Fleming was a "personality leader" in the workplace:

> If he didn't talk to me at all that day, they would not talk to me at all that day.  If I got a ride from somebody, maybe I would get a ride from somebody if he would do it.  But if he wouldn't do it, I wouldn't get a ride.  If he didn't want to tell me what the job was, I wouldn't know what the job was.

(Jones Dep. 28:1-23, Apr. 10, 2025, *Jones v. Fluor Facility & Plant Services, Inc.*, No. 1:23-CV-00039-GNS-HBB (Aug. 6, 2025), DN 68-1 [hereinafter Jones Dep. II]).  Jones testified that "[t]he last time I had an issue with a buggy at work was probably close to the last couple of days I was there.  Nothing's changed."  (Jones Dep. II 137:18-25).  Jones also asserts that Fluor falsely accused him of sexual harassment.  (Jones Dep. II 97:10-17, 100:6-102:11).

While seeking medical treatment for an unrelated car accident, Jones reported having thoughts of self-harm.  (Jones Dep. II 36:22-37:1, 68:6-18, 70:1-22).  After referral to inpatient facility, he also admitted to having thoughts of harming Logan Aluminum employees.  (Jones Dep. II 82:17-84:9).  The facility called the sheriff's department, which reported to Logan Aluminum and Fluor violent statements made by Jones.  (Jones Dep. II 83:7-11, 84:10-17).  Logan Aluminum

banned Jones from the plant, and Fluor suspended and ultimately terminated Jones.  (Jones Dep. II 72:8-23, 85:8-15).

Jones filed an additional suit in state court against Fluor, Bowersock, and Fleming, which was removed to federal court.[1]  (Notice Removal, *Jones II*, No. 1:23-CV-00039-GNS-HBB (Mar. 24, 2023), DN 1; Notice Removal Ex. 1, *Jones II*, No. 1:23-CV-00039-GNS-HBB (Mar. 24, 2023), DN 1-1).  Jones' two suits were consolidated, and *Jones II* was administratively dismissed.  (Order, *Jones II*, No. 1:23-CV-00039-GNS-HBB (Oct. 8, 2025), DN 77).

Jones now moves for reimbursement of costs paid to Fluor.  (Pl.'s Mot. Reimbursement Costs, DN 63).  Additionally, Defendants move to seal and move for summary judgment in *Jones I* and *Jones II*.  (Defs.' Mot. Seal, *Jones II*, No. 1:23-CV-00039-GNS-HBB (Aug. 7, 2025), DN 71; Def.'s Mot. Summ. J. Following Remand, DN 68; Defs' Mot. Summ. J., *Jones II*, No. 1:23-CV-00039-GNS-HBB (Aug. 6, 2025), DN 68).

## II.    **JURISDICTION**

This Court has subject-matter jurisdiction of this matter based upon federal question jurisdiction.  *See* 28 U.S.C. § 1331.  In addition, the Court has supplemental jurisdiction over Jones' state law claims.  *See* 28 U.S.C. § 1367(a).

## III.    **DISCUSSION**

### A.    **Motion for Reimbursement of Costs**

Before the Sixth Circuit reversed and remanded this Court's grant of summary judgment in *Jones I*, Jones was ordered to pay Fluor's costs.  (Order, DN 50); *see Jones I Appeal*, 2025 WL 707869, at *23-24, 29.  He now requests that the Court order Fluor to reimburse him because Fluor

---

[1] This Court will refer to the first suit, *Jones v. Fluor Facility & Plant Services, Inc.*, No. 1:23-CV-00039-GNS-HBB (Nov. 15, 2021), as *Jones I* and the second suit, *Jones v. Fluor Facility & Plant Services, Inc.*, No. 1:23-CV-00039-GNS-HBB (Mar. 24, 2023), as *Jones II*.

is no longer the prevailing party. (Pl.'s Mot. Reimbursement Costs 1). Fluor did not respond to this motion.

In this instance, "the awards of fees and costs must be vacated because the underlying judgment has been reversed." *Renfro v. Ind. Mich. Power Co.*, No. 1:99-CV-877, 2008 WL 544963, at *1 (W.D. Mich. Feb. 25, 2008). Therefore, Fluor shall refund the sum of $4,870.33 to Jones. *See Chad Youth Enhancement Ctr., Inc. v. Colony Nat'l Ins. Co.*, 474 F. App'x 429, 435 (6th Cir. 2012).

### B.    Motion to Seal

Pursuant to the parties' agreed protective order, Defendants move to seal Jones' medical records and journal entries. (Defs.' Mot. Seal 1, *Jones II*, No. 1:23-CV-00039-GNS-HBB; Agreed Protective Order 1, 4, DN 20; Jones Dep. II Exs. 20-22, *Jones II*, No. 1:23-CV-00039-GNS-HBB (Aug. 6, 2025), DN 69).

"Courts distinguish between limiting public disclosure of information during discovery versus the adjudicative stage of a case." *Dixon v. Exel, Inc.*, No. 2:24-CV-1891, 2025 WL 1903778, at *1 (S.D. Ohio July 10, 2025) (citing *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (6th Cir. 2016)). "The line between these two stages, discovery and adjudicative, is crossed when the parties place material in the court record." *Shane Grp., Inc.*, 825 F.3d at 305 (citing *Baxter Int'l, Inc. v. Abbott Lab'ys*, 297 F.3d 544, 545 (7th Cir. 2002)). "Unlike information merely exchanged between the parties, '[t]he public has a strong interest in obtaining the information contained in the court record.'" *Id.* (quoting *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1180 (6th Cir. 1983)). "Only the most compelling reasons can justify non-disclosure of judicial records." *In re Knoxville News-Sentinel Co.*, 723 F.2d 470, 476 (6th Cir. 1983) (citations omitted). To overcome "the strong presumption in favor of openness," parties

who move to seal documents must demonstrate: "(1) a compelling interest in sealing the records; (2) that the interest in sealing outweighs the public's interest in accessing the records; and (3) that the request is narrowly tailored." *Kondash v. Kia Motors Am., Inc.*, 767 F. App'x 635, 637 (6th Cir. 2019).

Defendants do not meet this burden. Defendants' "[m]otion is cursory and does not include the 'document-by-document, line-by-line' analysis required by *Shane Group* and its progeny to seal documents." *Dixon*, 2025 WL 1903778, at *2 (quoting *Shane Grp., Inc.*, 825 F.3d at 308). Defendants' only justification for sealing the exhibits is that they are covered by the agreed protective order. (Defs.' Mot. Seal 1, *Jones II*, No. 1:23-CV-00039-GNS-HBB). "The Court cannot seal documents simply because the parties designate them as confidential under a stipulated protective order." *Dixon*, 2025 WL 1903778, at *2 (citations omitted).[2]

The exhibits, however, contain Jones' social security number and date of birth. (Jones Dep. II Exs. 20-22, *Jones II*, No. 1:23-CV-00039-GNS-HBB). Pursuant to Fed. R. Civ. P. 5.2(a), only the last four digits of his social security number and the year of his birth may be included in filings. Thus, leave to seal DN 69 is granted, but Defendants are directed to file a redacted version of the document in accordance with Fed. R. Civ. P. 5.2.

## C. Motions for Summary Judgment

In ruling on a motion for summary judgment, the Court must determine whether there is any genuine issue of material fact that would preclude entry of judgment for the moving party as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of stating the

---

[2] While the exhibits do contain Jones' medical information, "by filing claims for disability-related discrimination . . . , Plaintiff placed his disability at issue in this case. And courts within this circuit find that plaintiffs who place their medical condition at issue waive any applicable privileges or statutory protections that their medical records would have otherwise had." *Dixon*, 2025 WL 1903778, at *2 (internal quotation marks omitted) (citations omitted).

basis for the motion and identifying the evidence demonstrating an absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party satisfies its burden, the nonmoving party must then produce specific evidence proving the existence of a genuine dispute of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

While the Court must view the evidence in the light most favorable for the nonmoving party, the nonmoving party must do more than merely show the existence of some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted). Rather, the nonmoving party must present facts proving that a genuine factual dispute exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient" to overcome summary judgment. *Anderson*, 477 U.S. at 252.

### 1. *Jones I*

Fluor seeks summary judgment on Jones' remaining claims under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Kentucky Civil Rights Act ("KCRA"). (Def.'s Mot. Summ. J. Following Remand). Title VII prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1). "The language of the KCRA generally tracks the language of Title VII and, thus, 'should be interpreted consonant with federal interpretation.'" *Morris v. Oldham Cnty. Fiscal Ct.*, 201 F.3d 784, 793 (6th Cir. 2000) (quoting *Meyers v. Chapman Printing Co.*, 840 S.W.2d 814, 820 (Ky. 1992)). Because courts interpret Title VII and the Kentucky Civil Rights Act ("KCRA")

using the same standards, these claims will be analyzed together. *See Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 403 n.5 (6th Cir. 1997) (citing *Palmer v. Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO*, 882 S.W.2d 117, 119 (Ky. 1994)).

A plaintiff may establish a violation of Title VII by proving that race-based discrimination created a hostile work environment. *See Williams v. Gen. Motors Corp.*, 187 F.3d 553, 560 (6th Cir. 1999) (citations omitted). The Sixth Circuit has explained that:

> The elements of a racially hostile work environment are as follows: (1) the plaintiff "belonged to a protected group," (2) the plaintiff "was subject to unwelcome harassment," (3) "the harassment was based on race," (4) "the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment," and (5) "the defendant knew or should have known about the harassment and failed to act."

*Johnson v. Ford Motor Co.*, 13 F.4th 493, 503 (6th Cir. 2021) (quoting *Williams v. CSX Transp. Co.*, 643 F.3d 502, 511 (6th Cir. 2011)). Only the fifth element is still at issue here; having found that there are genuine issues of material fact regarding whether Jones was subject to severe or pervasive race-based harassment, the Sixth Circuit remanded for this Court to determine in the first instance "whether there is a genuine dispute of material fact regarding whether Fluor knew or should have known about the race-based harassment and failed to act in response." *Jones I Appeal*, 2025 WL 707869, at *11 (citation omitted).

### i. Fluor's Knowledge

"An employer is deemed to have notice of harassment reported to any supervisor or department head who has been authorized—or is reasonably believed by a complaining employee to have been authorized—to receive and respond to or forward such complaints to management." *Gallagher v. C.H. Robinson Worldwide, Inc.*, 567 F.3d 263, 277 (6th Cir. 2009) (citing *Bombaci v. J. Cmty. Pub. Grp. Inc.,* 482 F.3d 979, 984 (7th Cir. 2007)). Contrary to Fluor's contentions, the standard is not that a "plaintiff, or any other individual, must 'report' the offensive conduct of

co-workers to the employer.  Rather, to succeed, the plaintiff must establish that the employer 'knew or should have known' of the offenses." *Jackson v. Quanex Corp.*, 191 F.3d 647, 663 (6th Cir. 1999).[3]

Jones' harassment was reported to Arthur Riley ("Riley"), a member of management, Craig, and Thornberry.  (*See* Def.'s Mot. Summ. J. Following Remand 7-11).  Anything Riley and Craig knew about Jones' harassment is imputed to Fluor.  *See Jones I Appeal*, 2025 WL 707869, at *28 n.5.  The parties dispute, however, whether Thornberry is a supervisor authorized to field complaints.[4]

Fluor's anti-harassment policy provides that "[e]mployees who believe they are victims of harassment have a responsibility to report the incident immediately to their supervisor or

_____

[3] The standards a plaintiff must meet to prove the fifth element of a hostile work environment claim—an employer's liability—differ depending on whether a supervisor or a coworker harasses the plaintiff.  *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 813 n.2 (6th Cir. 2013) ("To recover against [his employer], [the plaintiff] was required to demonstrate a basis for employer liability based on *either* a supervisor's participation in the harassment that created the hostile work environment (subject to an affirmative defense), *or* [the employer's] negligence in discovering or remedying harassment by [the plaintiff's] coworkers." (internal quotation marks omitted) (citation omitted)).  An employer is vicariously liable for the acts of a supervisor unless the employer establishes an *Faragher/Ellerth* defense by showing the following:  "(a) that it exercised reasonable care to prevent and correct promptly any . . . harassing behavior; and (b) that plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise."  *Thornton v. Fed. Express Corp.*, 530 F.3d 451, 456 (6th Cir. 2008) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998); *Jackson*, 191 F.3d at 659).  Fluor attempts to assert the *Faragher/Ellerth* defense here, but Jones does not allege harassment by a supervisor.  Because Jones alleges that he was harassed by coworkers, he must show that Fluor knew or should have known about the harassment and failed to act.  *Johnson*, 13 F.4th at 503.  Jones' alleged failure to report any harassment is irrelevant.

[4] Fluor argues that Jones identifies no record evidence in his response.  (Def.'s Reply Mot. Summ. J. Following Remand 4, DN 69).  While Jones does not cite the record directly, he does cite his response in *Jones II*, which in turn cites the record.  (*See* Pl.'s Resp. Def.'s Mot. Summ. J. Following Remand, DN 72).  Jones is not just "dropping a pile of paper on the district judge's desk and expecting him to sort it out[;]" instead, he directs the Court to specific pages.  *Dean-Lis v. McHugh*, 598 F. App'x 412, 415 (6th Cir. 2015) (*Wimbush v. Wyeth*, 619 F.3d 632, 638 n.4 (6th Cir. 2010)).

manager . . . ." (Jones Dep. I Ex. 3, at 95). If Fluor designated Thornberry as a "supervisor," then, according to its own anti-harassment policy, Fluor had notice when Jones reported harassment to Thornberry.[5] *See West v. Tyson Foods, Inc.*, 374 F. App'x 624, 634 (6th Cir. 2010) ("Parks was a supervisor, and an employee's supervisor was listed as one of the persons through whom an employee could report sexual harassment under Tyson's policy." (citing *Coates v. Sundor Brands, Inc.*, 164 F.3d 1361, 1364 (11th Cir. 1999); *Baugham v. Battered Women, Inc.*, 211 F. App'x 432, 439 (6th Cir. 2006))). Jones avers that Thornberry was his "direct supervisor" and provided him with instructions. (Jones Dep. II 21:13-24, 26:23-27:2). Thornberry also describes his position as "night shift supervisor." (Thornberry Dep. 32:11-14). On the other hand, Dawn Gallegos, a Fluor human resources representative, described Thornberry as "an hourly-wage employee who is neither a supervisor nor manager." (Gallegos Decl. ¶ 4, DN 38-3). Thus, there is a genuine question of material fact as to whether Thornberry was a supervisor authorized, or reasonably believed by Jones to be authorized, to receive and forward complaints to management. Because Jones avers that each incident was reported to either Riley, Craig, or Thornberry, whether Fluor knew about the harassment is a triable issue of material fact.

### ii.    Fluor's Response

Generally, an employer's response is adequate if it is reasonably calculated to end the harassment. *Jackson*, 191 F.3d at 663 (citations omitted). "[A] court must judge the appropriateness of a response by the frequency and severity of the alleged harassment." *Id.* (citation omitted). As the Sixth Circuit has explained:

---

[5] Because of Fluor's policy, Thornberry's knowledge of the harassment could be imputed to Fluor even if he is not a supervisor for purposes of establishing vicarious liability under Title VII. Accordingly, it is unnecessary for the Court to determine whether Thornberry is a supervisor for that purpose at this stage.

> "Steps that would 'establish a base level of reasonably appropriate corrective action' may include promptly initiating an investigation to determine the factual basis for the complaint, 'speaking with the specific individuals identified by [the complainant], following up with [the complainant] regarding whether the harassment was continuing, and reporting the harassment to others in management.'"

*Chaney v. Haworth, Inc.*, 802 F. App'x 1006, 1010 (6th Cir. 2020) (alterations in original) (quoting *Jackson*, 191 F.3d at 663).

Fluor argues that it adequately responded to its employees' use of the N-word, and, though that may be true, a reasonable jury could find that it did not respond appropriately to the other alleged incidents of harassment. Viewing the facts in the light most favorable to Jones, Fluor was made aware of various incidents—such as employees giving Jones the "cold shoulder" and making stereotypical remarks—that it never specifically addressed. (*See* Pl.'s Resp. Def.'s Mot. Summ. J. Following Remand 1; Pl.'s Resp. Defs.' Mot. Summ. J. 10-11, *Jones II*, No. 1:23-CV-00039-GNS-HBB (Sept. 14, 2025), DN 72). Moreover, the Sixth Circuit held that a reasonable jury could find that Fluor's response to the retaliation against Jones was insufficient based on Fluor's response to the grease incident. *Jones I Appeal*, 2025 WL 707869, at *28. Because Jones also provides the grease incident as evidence of harassment, the same conclusion follows here. (*See* Pl.'s Resp. Def.'s Mot. Summ. J. Following Remand 2). Thus, Fluor has not shown conclusively that it responded adequately at this stage of the litigation.[6] Accordingly, summary judgement on the *Jones I* harassment claim is denied.

### 2.    *Jones II*

Defendants also seek summary judgment on Jones' claims against Fluor for harassment, disability discrimination, and intentional infliction of emotional distress, and Jones' claims against

---

[6] Again, Jones did not waive this argument by relying on his response in *Jones II*.

all Defendants for retaliation. (Defs.' Mot. Summ. J., *Jones II*, No. 1:23-CV-00039-GNS-HBB). Jones concedes that his intentional infliction of emotional distress claim should be dismissed. (Pl.'s Resp. Defs.' Mot. Summ. J. 2 n.1, *Jones II*, No. 1:23-CV-00039-GNS-HBB). His remaining claims are brought under the KCRA. *See Morris*, 201 F.3d 784, 793 (interpreting claims brought under the KCRA using the same standards as those brought under Title VII).

### a.   Inadmissible Evidence

As a preliminary matter, Defendants argue that some of the evidence Jones relies on his response is hearsay.[7] Hearsay is an out-of-court statement offered in evidence to prove the truth of the matter asserted. Fed. R. Evid. 801(c). "At the summary-judgment stage, '[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence,' Fed. R. Civ. P. 56(c)(2), and 'the substance must still comport with the rules of evidence, including the rules on hearsay.'" *Warren v. Hollingsworth Mgmt. Servs., LLC*, No. 22-1064, 2022 WL 18542504, at *2 (6th Cir. Dec. 19, 2022) (alteration in original) (quoting *Shazor v. Pro. Transit Mgmt., Ltd.*, 744 F.3d 948, 960 (6th Cir. 2014)).

Defendants first argue that Thornberry's journal entries are inadmissible. (Defs.' Reply Mot. Summ. J. 6-8, *Jones II*, No. 1:23-CV-00039-GNS-HBB (Nov. 14, 2025), DN 69). Jones has not shown that the journal entries themselves are admissible; however, Jones cites to Thornberry's deposition, in which Thornberry explained that his journal helps refresh his recollection and he discussed the events he recorded in his journal. (*See* Pl.'s Resp. Defs.' Mot. Summ. J. 5-6, *Jones II*, No. 1:23-CV-00039-GNS-HBB). Defendants do not assert that Thornberry's testimony, or

---

[7] Though Defendants raise these evidentiary arguments for the first time in their reply, the arguments are responsive to evidence cited by Jones in his Response. *See Palazzo v. Harvey*, 380 F. Supp. 3d 723, 730 (M.D. Tenn. 2019) ("[R]eply briefs reply to arguments made in the response brief . . . ." (quoting *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008)).

journal entries used solely to refresh his memory, would be inadmissible.  Defendants, however, have identified "hearsay within hearsay," so, even if Thornberry testified, his testimony would *still* be hearsay.  (Defs.' Reply Mot. Summ. J. 6-8, *Jones II*, No. 1:23-CV-00039-GNS-HBB).  Jones does not address this issue and therefore does not carry his burden to show that the challenged evidence is admissible or may be presented in an admissible form.  Thus, this Court will not consider the following:  Thornberry's testimony that Logan Aluminum's maintenance supervisor told Thornberry that someone had said that Jones had quit; Thornberry's testimony that Chase Hilburn said that everyone on the day shift spoke badly about Jones; and Thornberry's testimony that Craig complained to him about Jones reading the Bible.

Defendants next characterize as hearsay Jones' statement that Thornberry told him that Fluor employees looked at Jones' lawsuit on their phones.  (Defs.' Reply Mot. Summ. J. 11, *Jones II*, No. 1:23-CV-00039-GNS-HBB).  This clearly is hearsay, but Jones also relies on Thornberry's own deposition testimony, and Defendants do not argue that Thornberry's direct testimony would be inadmissible at trial.  (Pl.'s Resp. Defs.' Mot. Summ. J. 13, *Jones II*, No. 1:23-CV-00039-GNS-HBB).  Thus, the Court may consider this evidence.  To the extent that Jones' statements assert that Fleming, Bowersock, or any specific person at Fluor knew about the lawsuit, that would be speculation, and the Court will not consider such as evidence, although Jones may argue that Defendants knew about the lawsuit based on circumstantial evidence.  *See* Fed. R. Evid. 602.

### b.    Racially Hostile Work Environment

In *Jones II,* Jones argues again that Fluor created a racially hostile work environment.  (Am. Compl. ¶¶ 25-29, *Jones II*, No. 1:23-CV-00039-GNS-HBB (May 1, 2023), DN 16).  As stated above:

> The elements of a racially hostile work environment are as follows: (1) the plaintiff "belonged to a protected group," (2) the plaintiff "was subject to unwelcome

harassment," (3) "the harassment was based on race," (4) "the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment," and (5) "the defendant knew or should have known about the harassment and failed to act."

*Johnson*, 13 F.4th at 503 (quoting *Williams*, 643 F.3d at 511).

First, Fluor does not contest that Jones belongs to a protected group. (*See* Defs.' Mot. Summ. J., *Jones II*, No. 1:23-CV-00039-GNS-HBB).

Second, Jones maintains that his claims in *Jones II* are based on harassment that occurred after he filed *Jones I*. (Pl.'s Resp. Defs.' Mot. Summ. J. 1-3, *Jones II*, No. 1:23-CV-00039-GNS-HBB). Setting the hearsay evidence to the side, as discussed above, Jones' only remaining allegation is that the "cold shoulder incidents," such as "employees turning their chairs away from Mr. Jones, not acknowledging him, and denying him buggy rides . . . ," have continued. (Pl.'s Resp. Defs.' Mot. Summ. J. 5, *Jones II*, No. 1:23-CV-00039-GNS-HBB). The vagueness of that allegation is not disqualifying: the Sixth Circuit has "noted that when a victim makes allegations of ongoing harassment, the 'inability to recount any more specific instances goes to the weight of her testimony, a matter for the finder of facts.'" *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 334 (6th Cir. 2008) (quoting *Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 252 (6th Cir. 1998)). Thus, Jones has sufficiently alleged harassment.

Third, that harassment must be based on race. This harassment is facially race-neutral, but "[f]acially neutral abusive conduct can support a finding of . . . animus sufficient to sustain a hostile work environment claim when that conduct is viewed in the context of other, overtly . . . discriminatory conduct." *Jordan v. City of Cleveland*, 464 F.3d 584, 596 (6th Cir. 2006) (alterations in original) (citations omitted). Based on incidents that occurred prior to the filing of *Jones II*, which are the subject of *Jones I*, a reasonable jury could find that this harassment is a continuation of prior race-based harassment. *See Jones I Appeal*, 2025 WL 707869, at *11-

14

16. Moreover, the alleged retaliation against Thornberry provides additional evidence that Jones' harassment was racially motivated. (Pl.'s Resp. Defs.' Mot. Summ. J. 8, *Jones II*, No. 1:23-CV-00039-GNS-HBB (asserting that employees taunted Thornberry for associating with black employees)).

Fourth, that race-based harassment must be severe and pervasive enough to alter the conditions of Jones' employment. Courts determine "whether an environment is 'hostile" or 'abusive' . . . by looking at all the circumstances." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). "These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* A plaintiff must show the working environment was both subjectively and objectively hostile or abusive. *Id.* at 21-22.

Though the "cold shoulder incidents" are examples of social ostracization, Jones alleged these incidents impacted his work. As the Sixth Circuit noted in *Jones I*, "unreason[a]bl[e] interfere[nce] with an employee's work performance" is an indication that racial harassment is more severe. *Jones I Appeal*, 2025 WL 707869, at *22 (second and third alterations in original) (quoting *Harris*, 510 U.S. at 23). Unlike in *Jones I*, these cold shoulder incidents are the only admissible evidence Jones proffered. *Jones I Appeal*, 2025 WL 707869, at *18-20 (considering employees' verbal abuse—their use of racial slurs and stereotypes—the grease thrown on Jones' windshield, and the cold shoulder incidents as evidence). "While such conduct could contribute to a finding of a hostile work environment, . . . it is not, on its own, objectively severe conduct." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 517 (6th Cir. 2009) (employees gave plaintiff the "cold shoulder" and "ignore[d] her requests for materials she needed in the course of her work"); *see Russell v. Ohio, Dep't of Admin. Servs.*, 302 F. App'x 386, 394 (6th Cir. 2008) ("[M]ere social

avoidance without more is not the kind [of] harm that gives rise to a claim."); *Thomas v. Haaland*, No. 1:19-CV-00157-GNS, 2022 WL 801284, at *7 (W.D. Ky. Mar. 15, 2022) (being called "creep" and avoided by coworkers is not objectively severe), *aff'd*, No. 22-5330, 2023 WL 9055400 (6th Cir. Apr. 4, 2023). Because Jones has not demonstrated that race-based harassment was severe or pervasive, Fluor is entitled to summary judgment on this claim.

### c.    Retaliation

Jones brings retaliation claims against Fluor, Fleming, and Bowersock. "Unlike retaliation claims brought under Title VII, the KCRA plainly 'permits the imposition of liability on individuals.'" *Queen v. City of Bowling Green*, 956 F.3d 893, 902 (6th Cir. 2020) (quoting *Morris*, 201 F.3d at 794).

A plaintiff may use direct or circumstantial evidence to prove retaliation, but if the plaintiff relies on circumstantial evidence, the burden-shifting framework of *McDonnell Douglas* applies. *Jackson v. Genesee Cnty. Rd. Comm'n*, 999 F.3d 333, 344 (6th Cir. 2021) (citations omitted); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

> Under *McDonnell Douglas*, if the plaintiff establishes her prima facie case then the burden shifts to the defendant to demonstrate some "legitimate, nondiscriminatory reason" for its action. If the defendant produces such a reason, the burden shifts back to the plaintiff to show that the proffered reason was a mere pretext for discrimination. The ultimate burden, however, remains with the plaintiff to convince the factfinder that the defendant retaliated against her for engaging in protected activity.

*Jackson*, 999 F.3d at 344 (internal citations omitted) (citation omitted). To establish a prima facie retaliation claim, a plaintiff must show the following:

> (1) he engaged in protected activity; (2) his employer knew about his exercise of protected rights; (3) the employer thereafter took adverse employment action against him or a supervisor subjected him to severe or pervasive retaliatory harassment; and (4) there was a causal connection between his protected activity and the adverse employment action or the retaliatory harassment.

*Arnold v. City of Columbus*, 515 F. App'x 524, 536 (6th Cir. 2013) (citation omitted).

16

First, Defendants do not dispute that Jones' pursuit of an EEOC charge and *Jones I* constitute protected activity.

Second, Jones points to Thornberry's testimony as circumstantial evidence of Defendants' knowledge. (Pl.'s Resp. Defs.' Mot. Summ. J. 13, *Jones II*, No. 1:23-CV-00039-GNS-HBB). Thornberry said he knew about the legal action involving Jones because other Fluor employees were reading something on their phone and told him there was a lawsuit. (Thornberry Dep. I 117:13-120:17). When asked who was looking at their phone, Thornberry responded "Oh, Lord. Everybody that works out here." (Thornberry Dep. I 117:19-24). He later described it as "the talk of the whole plant." (Thornberry Dep., 146:13-16, June 30, 2025, *Jones II*, No. 1:23-CV-00039-GNS-HBB (Sept. 14, 2025), DN 72-2 [hereinafter Thornberry Dep. II]). Thus, a reasonable jury could infer that Defendants knew about Jones' protected activity.

Third, Jones argues that Defendants retaliated against him by escalating their harassment and terminating him. A claim for coworker retaliation "is not easily established." *Garcia v. Beaumont Health Royal Oak Hosp.*, No. 22-1186, 2022 WL 5434558, at *8 (6th Cir. Oct. 7, 2022) (noting that the court could only identify two cases where it reversed summary judgment on claims of coworker retaliation). For harassment by coworkers to rise to the level of retaliation, Jones must allege that "the workplace [was] permeated with discrimination, intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of [] [his] employment." *Frazier v. Ford Motor Co.*, No. 3:98-CV-254-H, 2001 WL 1689816, at *4 (W.D. Ky. Nov. 8, 2001) (citation omitted); *cf. Hawkins*, 517 F.3d at 347 ("[W]e hold that an employer will be liable for the coworker's actions if . . . the coworker's retaliatory conduct is sufficiently severe so as to dissuade a reasonable worker from making or supporting a charge of discrimination . . . ." (citations omitted)). Fluor is only liable for its employees' conduct "if (1) the coworker's

retaliatory conduct is sufficiently severe so as to dissuade a reasonable worker from making or supporting a charge of discrimination, (2) supervisors or members of management have actual or constructive knowledge of the coworker's retaliatory behavior, and (3) supervisors or members of management have condoned, tolerated, or encouraged the acts of retaliation, or have responded to the plaintiff's complaints so inadequately that the response manifests indifference or unreasonableness under the circumstances." *Garcia*, 2022 WL 5434558, at *8 (citation omitted).

The only evidence Jones offers against Fleming and Bowersock is their participation in Jones' ostracization. (Pl.'s Resp. Defs.' Mot. Summ. J. 5, *Jones II*, No. 1:23-CV-00039-GNS-HBB). This evidence is insufficient for a jury to find that Fleming and Bowersock's alleged harassment was severe enough to form the basis of a retaliation claim. *See Norman v. Rolling Hills Hosp., LLC*, 820 F. Supp. 2d 814, 823 (M.D. Tenn. 2011) ("Nor does the teasing and rudeness by the plaintiff's co-workers, which was not severe enough to create a hostile work environment, constitute an adverse action."); *Akers v. Alvey*, 338 F.3d 491, 499 (6th Cir. 2003) ("Alvey's alleged post-complaint conduct (i.e., ignoring Akers, encouraging her coworkers to do the same, criticizing her work, and withholding her mail) falls somewhere in between the egregious conduct in *Morris* and 'simple teasing' or 'offhand comments.'"); *Garcia*, 2022 WL 5434558, at *2 (finding against plaintiff where a coworker created a situation where "coworkers did not want to be in a room alone with her anymore . . . .").

Jones also alleges that "Fluor falsely accused Mr. Jones of sexual harassment" and terminated him. (Pl.'s Resp. Defs.' Mot. Summ. J. 15-16, *Jones II*, No. 1:23-CV-00039-GNS-HBB). Jones asserts that Thornberry "pulled him aside to have an interview" to see if he "sexually harassed somebody." (Jones II 105:9-10). Flour's actions here are not particularly serious: Jones claims Thornberry—Jones' friend—questioned him once, and Fluor never disciplined Jones.

(Jones Dep. I 21:11-15; Jones Dep. II 100:18-105:23).[8]  To the extent that Fluor is also liable for its employees ostracization of Jones, this is still not enough to constitute severe or pervasive harassment.  *See Johnson*, 13 F.4th at 505 ("Generally, 'simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.'"  (quoting *Faragher*, 524 U.S. at 788)).  Accordingly, the only adverse employment action here is Jones' termination.  *See Michael*, 496 F.3d 584, 593.

Fourth, but-for causation must be shown.  *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).  "At the prima facie stage, this burden 'is not onerous,' and can be met through 'evidence that defendant treated the plaintiff differently from similarly situated employees or that the adverse action was taken shortly after the plaintiff's exercise of protected rights.'"  *George v. Youngstown State Univ.*, 966 F.3d 446, 460 (6th Cir. 2020) (quoting *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000)).

Jones has not shown a causal connection between any protected action and his termination.  There is no strong temporal connection—Jones filed the EEOC charge in August 2021 and his first lawsuit in November 2021 but was not fired until March 2022.  (Am. Compl. ¶¶ 15, 17, 24, *Jones*

---

[8] Fluor's investigation is not an adverse employment action.  "An adverse employment action in the context of a Title VII discrimination claim is a materially adverse change in the terms or conditions of employment because of the employer's actions."  *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 593 (6th Cir. 2007) (internal quotation marks omitted).  Materially adverse changes in the terms and conditions of employment include "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation."  *Id.* at 594 (internal quotation marks omitted).  "[T]he act of investigating possible employee misconduct is not an adverse [employment] action."  *Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 626 (6th Cir. 2013) (second alteration in original) (citation omitted) (holding that internal investigation into the rape allegation did not constitute an adverse employment action).  Jones "has not shown that the investigation, during the time it was open, changed the form or conditions of his employment, let alone effected any change in a 'materially adverse' way.  He suffered no disciplinary action, demotion, or change in job responsibilities during the course of the investigation."  *Id.*; (Jones Dep. II 100:18-105:23).

*II*, No. 1:23-CV-00039-GNS-HBB); *see Jackson*, 999 F.3d at 349 (citation omitted) ("Temporal proximity between the protected activity and the adverse employment action is an important category of circumstantial evidence.").

Jones also argues that he was treated differently than "white employees not suing the company . . . ." who also made threats of violence. (Pl.'s Resp. Defs.' Mot. Summ. J. 15, *Jones II*, No. 1:23-CV-00039-GNS-HBB). "To be similarly situated, the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Smith v. Leggett Wire Co.*, 220 F.3d 752, 762 (6th Cir. 2000) (internal quotation marks omitted) (citation omitted).

As evidence of this disparate treatment, Jones point to Thornberry's testimony that he hears threats of violence "at that plant every day." (Thornberry Dep. II 184:10-13). Thornberry acknowledged, however, that these "threats" were qualitatively different from Jones' threats to beat his coworkers to death with his bare hands—Thornberry called his coworkers' supposed threats "nonsense" and said that "they're just joking." (Thornberry Dep. II 168:9-22, 184:10-25). Workplace jokes are simply not comparable to serious thoughts of harm made to medical professionals. Accordingly, Jones has not demonstrated that his protected activity was the but-for cause of his termination.[9]

Finally, even if Jones were able to establish a prima facie case establishing that his termination was retaliatory, Fluor has offered two non-discriminatory reasons: (1) Logan

---

[9] This Court reaches this conclusion without relying on the state court's decision on Jones' unemployment claim, so Jones' arguments regarding his unemployment claim are moot. (*See* Pl.'s Resp. Defs.' Mot. Summ. J. 16-19).

Aluminum independently banned Jones from the worksite, and (2) Jones made threats of violence against his coworkers. (Defs.' Reply Mot. Summ. J. 14). Courts have made clear that death threats constitute legitimate a nondiscriminatory basis firing an employee. *See, e.g.*, *Smith*, 220 F.3d at 759 (collecting cases).

A plaintiff "can show pretext in three interrelated ways: (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that [the proffered reasons were] insufficient to motivate the employer's action." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009). Jones attempts to show pretext by identifying comparators, but as discussed above, the comparators are not similarly situated. Thus, Defendants are entitled to summary judgment on the issue of Fluor's retaliatory termination.[10]

### d.    Disability Discrimination

"The Kentucky Civil Rights Act bars an employer from discharging an employee because of disability." *Barnett v. Cent. Ky. Hauling, LLC*, 617 S.W.3d 339, 340 (Ky. 2021) (footnote omitted). "A plaintiff may prove a violation of the KCRA either by presenting direct evidence of discrimination, or by using the burden-shifting framework established in *McDonnell Douglas* . . . ." *Hawkins v. Bd. of Educ. of Scott Cnty.*, 716 S.W.3d 1, 6 (Ky. App. 2025) (citing *Williams v. Wal-Mart Stores, Inc.*, 184 S.W.3d 492, 495-96 (Ky. 2005)). Jones does not present any direct evidence, so he must proceed under the *McDonnell Douglas* framework. Under *McDonnell Douglas*:

> To establish a *prima facie* case of disability discrimination, a plaintiff must demonstrate: (1) that he has a disability as defined by the Act; (2) that he is

---

[10] Jones also complained that "Mr. Craig gave the order that anyone who saw Mr. Jones should call security because of Mr. Jones' alleged threats." (Pl.'s Resp. Defs.' Mot. Summ. J. 15, *Jones II*, No. 1:23-CV-00039-GNS-HBB). Just like his termination, this is not causally related to Jones' protected activity, but rather was due to Logan Alumunn's decision to ban him from the worksite and Jones' threats. Jones cannot show these reasons were pretextual.

otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation; and (3) that he suffered an adverse employment action because of the disability.  If the plaintiff establishes these elements, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment decision.  If the employer does so, the burden returns to the plaintiff to prove that the stated reason was a pretext for unlawful discrimination.

*Id.* (citations omitted).

First, Jones must establish a *prima facie* case.  Jones argues that Fluor terminated him because it perceived him "as disabled based on his hospitalization for mental health."  (Pl.'s Resp. Defs.' Mot. Summ. J. 19-21, *Jones II*, No. 1:23-CV-00039-GNS-HBB).  Even assuming that is true, Jones cannot show that he was otherwise qualified to perform the essential functions of his job because Logan Aluminum, Fluor's customer, has permanently barred Jones from its worksite.  *See E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 763 (6th Cir. 2015) (finding regular attendance was an essential function of plaintiff's job).

Moreover, Logan Aluminum's ban and Jones' statements about harming coworkers are clearly nondiscriminatory reasons supporting his termination.  Jones provides no evidence or argument that these stated reasons are pretextual.[11]  Thus, Fluor is entitled to summary judgment on Jones' disability discrimination claim.

## IV.    CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that:

---

[11] Jones claims he received disparate treatment compared to "white employees not suing the company" who allegedly made threats of violence, but he does not allege that he was treated differently than *non-disabled* coworkers who made threats of violence.  (Pl.'s Resp. Defs.' Mot. Summ. J. 15, *Jones II*, 1:23-CV-00039-GNS-HBB).  "To establish a prima facie case of disability discrimination, [a plaintiff] must show, among other things, that 'similarly situated' non-disabled employees 'were treated more favorably' than he was."  *Waggoner v. Carlex Glass Am., LLC*, 682 F. App'x 412, 415 (6th Cir. 2017) (quoting *Jones v. Potter*, 488 F.3d 397, 404 (6th Cir. 2007)).

1.      Plaintiff's Motion for Reimbursement of Costs (DN 63) is **GRANTED.**   This Court's Order (DN 50) directing payment of Defendants' costs is **VACATED**.   The Defendant shall refund the sum of $4,870.33 to Plaintiff by **February 10, 2026**.

2.      Defendants' Motion to Seal (DN 71, *Jones II*) is **GRANTED**.   Pursuant to Fed. R. Civ. P. 5.2, the personal data identifiers must be redacted from DN 69.   The Defendant shall file a redacted version of the document that includes a cover page entitled Notice of Filing and links this document to the originally filed document by **February 3, 2026**.

3.      Defendants' Motion for Summary Judgment Following Remand in *Jones I* (DN 68) is **DENIED**.

4.      Defendants' Motion for Summary Judgment in *Jones II* (DN 68, *Jones II*) is **GRANTED**.   Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

**Greg N. Stivers, Judge**
**United States District Court**
January 27, 2026

cc:      counsel of record